OPINION
{¶ 1} Appellant, Richard J. Goulding, Sr., appeals the judgment of the Trumbull County Common Pleas Court, Domestic Relations Division, denying his Civ.R. 60(B) motion for relief from judgment. At issue is whether the provision in the parties' divorce decree concerning the valuation of appellee Judy A. Goulding's interest in appellant's retirement benefit is ambiguous. For the reasons that follow, we affirm.
 {¶ 2} The parties to this action were married on November 9, 1998. At the time of the marriage, appellant had been a participant in the Central Pennsylvania Teamsters *Page 2 
Retirement Plan since January 1, 1987. Appellant filed his complaint for divorce on April 2, 2003. At a hearing held on April 28, 2005, the parties entered into a property settlement in which they agreed to a division of, inter alia, appellant's vested interest in the pension fund. The judgment entry ("divorce decree") approved by counsel for the parties and filed on May 20, 2005, provided at Paragraph 7: "The parties acknowledge that [appellant] has a Pension Plan with Central Pennsylvania Teamsters Pension Fund. The [appellee] is awarded and shall receive directly from the plan an amount equal to fifty percent (50%) of the marital portion of the Plaintiffs accrued benefit under the Plan. The marital portion of the plan shall be that part of the pension benefit earned during the term of the marriage, to wit, from September 30, 1998 through September 30, 2004, inclusive."
 {¶ 3} On April 28, 2005, the parties entered a Stipulated Qualified Domestic Relations Order ("QDRO"), which provided at Item 8:
 {¶ 4} "[Appellee] shall receive directly from the plan an amount equal to fifty percent (50%) of the marital portion of [appellant's] vested accrued benefit under the plan. The marital portion of the plan shall be that part of [appellant's] vested accrued pension benefit earned during the term of the marriage that being from September 30, 1998 (the valuation date closest to the date of marriage) through September 30, 2004 (the valuation date closest to the date of termination of marriage)."
 {¶ 5} In a letter, dated June 9, 2005, the Fund notified appellant and appellee as well as their respective attorneys of the distribution that would be made according to the terms of the QDRO. It stated, "The Order directs the Fund * * * to segregate and separately account for fifty percent (50%) of the marital portion from [appellant's] vested *Page 3 
account balance." The letter advised that the value of the marital portion would be determined according to the QDRO as "the change in [appellant's] * * * account balance between September 30, 1998, and September 30, 2004." The letter further stated that payment of benefits to appellee would be made as soon as possible after the order was deemed to be a QDRO. Finally, the letter advised the parties and their counsel that "if the above interpretation of the Order does not accurately describe the intentions of the parties, please contact Michelle Houch, the Fund's Pension Benefits Manager * * *." Neither appellant nor his counsel objected to this letter.
 {¶ 6} Thereafter, on or about June 21, 2005, pursuant to the QDRO, the Fund transferred $40,005.29 to appellee. Appellant was notified of the Fund's release of these proceeds to appellee on or about June 21, 2005, when it sent a letter to him advising him of this payment. Again, appellant did not object.
 {¶ 7} Then, eight months later, on February 7, 2006, appellant filed a motion for relief from judgment, asking the court to "correct the commencement of the accrual of the marriage interest of [appellant's] retirement benefits. * * *" He argued that while the parties were married on November 9, 1998, under Paragraph 7 of the divorce decree, appellee's interest in the pension begins to accrue on September 30, 1998. He therefore requested that appellee "should accrue no interest within [appellant's] retirement benefits until * * * November 9, 1998 * * *."
 {¶ 8} Appellant filed an amended motion for relief from judgment on March 3, 2006, arguing that a substantial portion of the growth of his retirement account during the time of the marriage was due to interest accruing on his premarital portion. He thus argued that appellee's receipt of $40,005.29 was in error and that she should be *Page 4 
ordered to return the excess. Appellant argued he had hired Pension Evaluators to determine what amount of the growth in his fund during the marriage was comprised of separate, non-marital funds and requested a hearing on receipt of the expert's report.
 {¶ 9} On March 6, 2006, the magistrate held a hearing on appellant's motion for relief. In his entry, the magistrate found the parties' divorce decree was prepared by appellant's counsel and signed and approved by counsel for both parties. He found that, while the divorce decree provided the parties were married on November 9, 1998, it provides that appellee's interest in appellant's retirement plan is from September 30, 1998 through September 30, 2004.
 {¶ 10} The magistrate found the QDRO also provided appellee's interest is from September 30, 1998 through September 30, 2004. It provided that these dates were the Fund's valuation dates closest to the actual marriage and marriage termination dates of the parties. He found that this explained why the parties chose these dates as the valuation dates rather than the actual dates. He further found the QDRO was agreed to by the parties and their counsel. As a result, the magistrate denied appellant's motion for relief from judgment. Appellant did not file any objections to the magistrate's decision.
 {¶ 11} On March 9, 2006, the court approved the magistrate's decision as the court's order and denied appellant's motion for relief under Civ.R. 60. The matter was continued pending receipt of the report of Pension Evaluators.
 {¶ 12} On June 21, 2006, appellant filed an amendment to the pending portion of his motion for relief. In his amendment appellant stated that when appellee received $40,005.29 pursuant to Paragraph 7 of the divorce decree, he "was certain that said *Page 5 
amount was in error, and retained Pension Evaluators to review same and prepare [a] report." Appellant incorporated in his amendment the report on the marital portion of his pension account using the "corrected" date of the marriage.
 {¶ 13} Pension Evaluators stated in its report that the marital portion of the account was $42,817.03. That report ignored the valuation method stipulated by the parties in the QDRO. Instead, it stated it followed the statutory definition of marital property and excluded passive appreciation. The report did not provide any calculations or the basis for its conclusion concerning the value of the marital portion. The report simply concluded that appellee's portion of the marital interest was fifty per cent of the marital portion, i.e., $21,403.51. In his amendment appellant asked for an order requiring appellee to return the excess transferred to her, i.e., $18,601.78.
 {¶ 14} On August 29, 2006, appellee filed her objection to appellant's amendment on the ground that the valuation method used by Pension Evaluators did not comply with the method set forth in the divorce decree and QDRO as stipulated by the parties. In support of her position, she submitted a report prepared by the Fund. She argued the Fund employed the calculation method stipulated by the parties in the divorce decree. She pointed out that in arriving at the $40,005.29 payout to her, the Fund subtracted the balance in the account as of September 30, 1998, i.e., $118,491.91, from the balance as of September 30, 2004, i.e., $192,130.09, to arrive at the difference, or $73,638.28. The Fund then divided that amount by two to arrive at $36,819.14. It then added $3,186.15, which represents the pro rata portion of plan gains and losses from the plan's valuation date of September 30, 2004 to May 31, 2005, the last valuation date before segregation of funds, for a total of $40,005.29. *Page 6 
 {¶ 15} On August 29, 2006, a hearing was held before the magistrate. However, according to the App.R. 9(C) statement, no evidence was offered at that time. Thus, no evidence was offered concerning the expert report submitted by appellant. Following the hearing, the magistrate found in his decision that there was no basis to set aside the property division to which the parties agreed. He found the plain language of Paragraph 7 of the divorce decree entitled appellee to receive the exact amount the Fund paid her. He found the payment to appellee pursuant to Paragraph 7 was proper as contemplated by the parties. He further found the payment appeared consistent with the parties' intent as expressed in the plain language of the divorce decree and corresponding QDRO. He thus denied the remaining portion of appellant's Civ.R. 60(B) motion. Again, appellant did not file any objections to the magistrate's decision.
 {¶ 16} On January 8, 2007, the court approved the magistrate's decision as the order of the court. In denying appellant's motion for relief, the trial court found:
 {¶ 17} "The payment to the [appellee] per paragraph 7 of the decree of divorce (as to [appellee's] share of [appellant's] pension) is proper as contemplated by the parties. The payment of * * * $40,005.29 appears to be consistent with the intent of the parties as expressed in the plain language of the decree of divorce and the corresponding QDRO."
 {¶ 18} Appellant appeals from the trial court's judgment, asserting as his sole assignment of error:
 {¶ 19} "THE TRIAL COURT ERRED IN RULING THAT INTEREST ON APPELLANT'S PRE-MARITAL DEPOSITS TO HIS PENSION BENEFIT ACCOUNT WAS MARITAL PROPERTY SUBJECT TO DIVISION." *Page 7 
 {¶ 20} On appeal appellant has abandoned his argument that the valuation date in the divorce decree should be "corrected." His sole argument on appeal is that Paragraph 7 of the divorce decree and corresponding Item 8 of the QDRO are ambiguous, and that the trial court should have interpreted them to be consistent with the statutory definition of marital property and interpretive case law. We do not agree.
 {¶ 21} Appellant argues that the amount paid to his ex-wife from his pension fund was excessive because it included interest on premarital deposits in his retirement account. In his motion for relief, appellant asked the court to interpret the subject provisions according to the statutory definition of marital property, which excludes interest on premarital deposits, i.e., passive appreciation.
 {¶ 22} Initially, we note that appellant did not file any objections to the findings of fact or conclusions of law of the magistrate in either of his decisions. "A party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion * * *." Civ.R. 53(E)(3)(d).
 {¶ 23} When a party fails to file objections to the magistrate's decision, he waives the right to assign as error in the appellate court any of the findings of fact or conclusions of law of the magistrate.Alimo v. Pomante Contractors, Inc. (Sept. 11, 1997), 10th Dist. No. 97APG02-221, 1997 Ohio App. LEXIS 4101, *5.
 {¶ 24} This court has held: "If a party fails to file objections to a magistrate's decision in accordance with Civ.R. 53, such claim or objection is waived for purposes of appeal, and an appellant may not then challenge the court's adoption of the magistrate's factual findings on appeal." Kistler v. Kistler, 11th Dist. No. 2003-T-0060,2004-Ohio-2309, at ¶ 22. *Page 8 
 {¶ 25} Because appellant did not file any objections to the findings of fact or conclusions of law in either decision of the magistrate, he waived the right to object to any of these findings or conclusions on appeal.
 {¶ 26} If appellant had not waived his right to appeal the findings and conclusions of the magistrate, we would have reviewed the trial court's adoption of the magistrate's decision under the abuse of discretion standard. Under this standard, the trial court's determination will only be reversed where it appears that its actions were arbitrary or unreasonable. Proctor v. Proctor (1988),48 Ohio App.3d 55, 60-61. Presumptions of validity and deference to a trial court as an independent fact-finder are embodied in the abuse of discretion standard. Dayton v. Whiting (1996), 110 Ohio App.3d 115.
 {¶ 27} An abuse of discretion means more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. When applying this standard, an appellate court may not merely substitute its judgment for that of the trial court. Berk v.Matthews (1990), 53 Ohio St.3d 161, 169.
 {¶ 28} Appellant framed his motion for an interpretation of the subject provisions as a motion for relief from judgment pursuant to Civ.R. 60. While such motion may in certain circumstances be an appropriate vehicle to raise this issue, appellant has not complied with the requirements of this rule. Civ. R. 60(B) provides in pertinent part:
 {¶ 29} "On motion * * * the trial court may relieve a party * * * from a final judgment * * * for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence * * *; (3) fraud * * *; (4) the judgment has been satisfied * * *; or (5) any other reason justifying relief from the judgment." *Page 9 
 {¶ 30} "To prevail on a motion under Civ.R. 60(B), the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B) (1), (2) or (3), not more than one year after the judgment was entered." GTE Automatic Elec, Inc. v. ARC Industries,Inc. (1976), 47 Ohio St.2d 146, 150.
 {¶ 31} In Hill v. Hill (Nov. 21, 1991), 2d Dist. No. 12569, 1991 Ohio App. LEXIS 5548, the court considered a case strikingly similar to the case sub judice. The parties in that case entered a separation agreement that was incorporated into the dissolution decree. The husband later filed a motion for relief from judgment. The clause at issue provided that upon the husband's retirement, the wife would be entitled to one-half of his gross retirement benefits. The husband argued that the omission of a valuation date for the marital interest in his retirement account resulted in an unfair distribution to his wife because the clause would allow her to receive the benefit of an additional seven years post-dissolution growth in the retirement fund. The husband argued he had a meritorious defense because, in his view, the lack of a valuation provision resulted in an ambiguity in the parties' settlement agreement.
 {¶ 32} The Second District held that because the clause provided the benefits would be distributed on retirement, the wording clearly indicated distribution would be at the time husband retired. In denying the motion for relief, the court held:
 {¶ 33} "When the agreement was drafted, [husband] did not question the wording of this clause, nor did he seek legal advice before signing this agreement. [Husband] *Page 10 
admits that * * * this issue arose only after he consulted an attorney * * *. The proper time to dispute the meaning of this clause was at its drafting. [Husband] * * * cannot now dispute the interpretation of this clause only because it is not to his satisfaction. * * * [Husband's] allegations * * * do not present the operative facts necessary for relief from judgment." Id. at *6.
 {¶ 34} In his motion for relief from judgment, appellant did not identify any of the reasons set forth at Civ.R. 60(B) in support, and we can discern no such ground from any of the five reasons listed in the rule.
 {¶ 35} We note that appellant stipulated to the method of valuation, the valuation dates, and the percentage of the pension benefits to be paid to appellee. Further, appellant failed to allege facts, which, if proven, would demonstrate any ground under Civ.R. 60 to set aside the judgment.
 {¶ 36} Appellant concedes on appeal that he stipulated to the provisions at issue, but that the trial court should have interpreted them because they are ambiguous.
 {¶ 37} It is well-settled that a trial court has the power to interpret a clause in a separation agreement that has been included in a divorce decree; however, it can only do so where the provision is ambiguous or uncertain. Bishop v. Bishop, 5th Dist. No. 2001CA00319, 2002-Ohio-1861, 2002 Ohio App. LEXIS, 1861, *5; Kistler, supra, at ¶ 14.
 {¶ 38} Further, a separation agreement is a contract, and is subject to the same rules of construction governing the interpretation of other contracts. Id. The provisions at issue here were part of the property settlement agreed upon and stipulated by the parties. They are thus also subject to these same rules of construction. *Page 11 
 {¶ 39} "[W]hen a term in an agreement is unambiguous, then the words must be given their plain, ordinary and common meaning; however, when the term is not clear, parol evidence is admissible to explain the meaning of the words." Forstner v. Forstner (1990), 68 Ohio App.3d 367,372.
 {¶ 40} Based upon our review of these provisions, there is nothing ambiguous or uncertain about them. They refer to appellant's vested pension benefits and provide that appellee is awarded 50 percent of the marital portion. The marital portion is defined in the divorce decree as that part of the pension benefit earned from September 30, 1998 to September 30, 2004. The trial court found the parties chose these dates to coincide with the Fund's nearest valuation dates.
 {¶ 41} The subject provisions do not exclude from appellee's distributive share passive appreciation on the premarital deposits in appellant's account. These provisions expressed the parties' intent at the time not to exclude this component from the valuation. Appellant cannot come back now and ask the court to rewrite the provisions to exclude this portion of his retirement benefits. To do so would, in effect, rewrite the parties' agreement to appellant's benefit and to appellee's detriment.
 {¶ 42} It should be noted that appellant has not drawn our attention to any evidence which would even suggest that the parties intended to exclude this item when the provisions were drafted. In fact, the circumstances at the time demonstrate that appellant did not intend to exclude passive appreciation. On June 9, 2005, appellant was advised by the Fund of its intention to follow the valuation method as outlined in the QDRO. He was given an opportunity to object to this method before the Fund made its *Page 12 
distribution to appellee. However, appellant did not object to the proposed method of payment.
 {¶ 43} While appellant concedes on appeal that he agreed to the division of property in the divorce decree and QDRO, he states he does not agree to the manner in which the distribution was carried out. He does not demonstrate or even argue that the Fund violated the terms of the QDRO or the divorce decree in making its distribution. In fact, he concedes elsewhere in his brief that it followed the terms of the QDRO, but argues it made "no distinction * * * between marital deposits and interest on pre-marital deposits." However, by agreement of the parties, the divorce decree and QDRO did not distinguish between these components. The divorce decree provides that appellee is entitled to 50 percent of appellant's pension benefit earned from September 30, 1998 to September 30, 2004. There is no exclusion for interest earned on premarital deposits. If appellant intended to exclude this element, he was required to do so when the provision was being drafted.
 {¶ 44} "[W]hen parties enter into an in-court settlement agreement, so long as the court is satisfied that it was not procured by fraud, duress, overreaching or undue influence, the court has the discretion to accept it without finding it to be fair and equitable. Settlement agreements are favored in the law. Where the parties enter into a settlement agreement in the presence of the court, such an agreement constitutes a binding contract. * * * Neither a change of heart nor poor legal advice is a ground to set aside a settlement agreement."Walther v. Walther (1995), 102 Ohio App.3d 378, 383.
 {¶ 45} In summary, appellant waived his right to challenge the magistrate's findings and conclusions by not objecting to them. In any event, he agreed to the *Page 13 
provisions at the time they were drafted. Their meaning is plain and unambiguous. This language expressed the parties' intent that interest earned on premarital deposits would not be excluded from appellee's portion of appellant's retirement benefits. There is no suggestion in this case of fraud, duress or undue influence. This is simply a case where appellant had a later change of heart, which is not a legal ground to obtain relief from judgment under Civ.R. 60(B). Even if appellant had not waived the argument, it would not have been an abuse its discretion for the trial court to have adopted the magistrate's decision denying appellant's motion for relief.
 {¶ 46} For the reasons stated in the Opinion of this court, the assignment of error is not well taken. It is the judgment and order of this court that the judgment of the Trumbull County Court of Common Pleas, Domestic Relations Division, is affirmed.
 MARY JANE TRAPP, J., TIMOTHY P. CANNON, J., concur. *Page 1